UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22901-Civ-SEITZ
(11-20583-Cr-SEITZ)
MAGISTRATE JUDGE P. A. WHITE

LAZARO CACERES,                    :

    Movant,                        :

v.                                 :       REPORT OF
                                           MAGISTRATE JUDGE
UNITED STATES OF AMERICA,          :

    Respondent.                    :
_____

## I. Introduction

This matter is before this Court on the movant's pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking the constitutionality of his conviction and sentence following a guilty plea entered in Case No. 11-20583-Cr-Seitz.

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion to vacate with supporting memorandum of law (Cv-DE# 1), Movant's amendments and supplement with attached affidavit (Cv-DE# 19, 20, 24); the government's response to the motion with supporting exhibits, which includes copies of the change of plea and sentencing transcripts (Cv-DE# 18, 30-1, 30-2); the movant's reply (Cv-DE# 21); all pertinent portions of the underlying criminal file; and the Presentence Investigation Report and addendum thereto.

## II. Claims

Movant presents his claims as seven separate grounds for

relief. See Motion to Vacate at 5A and 5B (Cv-DE# 1); Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody at 2-3 (Cv-DE# 20). Full and careful review of Movant's pleadings reveals that he is essentially arguing that he received ineffective assistance of trial counsel during the pre-trial stage of the case; or more accurately, pre-guilty plea stage, and during the sentencing stage of his case.

In sum, Movant alleges that initial trial counsel improperly failed to present him before the federal grand jury; failed to file pre-trial motions, challenging the grand jury proceedings and resultant Indictment; and failed to seek discovery materials from the government, including *Brady* and/or *Jencks* materials.[1] Movant alleges that successor counsel failed to properly prepare for trial and, instead, engaged in plea negotiations with the government without his express permission, consent or direction. He alleges that successor counsel rendered ineffective assistance with regard to sentencing, because counsel failed to (1) challenge incorrect information contained in the PSI; (2) investigate or challenge his criminal history; (3) challenge the sentencing enhancements so that he could obtain reduced sentencing by way of the Safety Valve; and (4) raise an *Alleyne*-type objection.[2] He also raises a related

---

[1] Brady v. Maryland, 373 U.S. 83 (1963), requires prosecutors to disclose to the defense any materially exculpatory evidence in the Government's possession. The Jencks Act, 18 U.S.C. §3500, "requires that, after a government witness has testified on direct examination, the government disclose to the defense verbatim statements made or adopted by that witness which relate to the subject matter to which the witness has testified.... Under the Jencks Act only prior verbatim statements made or adopted by a witness and relating to his testimony need be disclosed to the defense. See 18 U.S.C. sec. 3500(e)(1) and (2)." United States v. Valera, 845 F.2d 923, 926 (11th Cir. 1988)(citing United States v. Ricks, 817 F.2d 692, 698 (11th Cir. 1987); United States v. Gaston, 608 F.2d 607, 611 (5th Cir. 1979)). Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

[2] In brief, in *Alleyne*, the Supreme Court overturned Harris v. United States, 536 U.S. 545 (2002), by holding that facts which increase the mandatory minimum sentence for a crime must be submitted to a jury and found beyond a reasonable doubt. Alleyne v. United States, ____ U.S. ___, 133 S.Ct. 2151 (June

claim of prosecutorial misconduct, alleging that the enhancements included in the PSI were erroneous.

### III. <u>Factual Background</u>[3]

In May 2010, law enforcement agents received information regarding a narcotics trafficking organization operating in the Tampa, Florida area that obtained cocaine from a supplier located in the Miami, Florida area. Based upon the information, the Miami Division of the FBI began an investigation into the cocaine trafficking activities of Caceres. Before the subject investigation, agents had seized more than one kilogram of cocaine in two controlled purchases from Caceres and codefendant Vania Alvarez, Caceres' then-girlfriend.

From November 12, 2010, through December 11, 2010, law enforcement purchased an additional .25 kilograms of cocaine from Caceres through the use of a confidential informant. During this period, by way of authorized intercepted telephone conversations and physical surveillance, it became apparent that Caceres was dealing in cocaine and methylenedioxymethamphetamine ("MDMA"). Caceres purchased some of his cocaine from codefendant Noa. After Caceres received a kilogram of cocaine from Noa, he and codefendant Alvarez would often divide it into .25 kilogram quantities which they would then provide to codefendants Fordham and Mason and others who distributed the cocaine in the Tampa, Florida area. Caceres and Alvarez would often use Alvarez's bank account to deposit the money obtained from their drug trafficking enterprise and then to pay for multiple cocaine purchases.

---

17, 2013). The Supreme Court concluded that *Harris* was inconsistent with the Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and with the original meaning of the Sixth Amendment. <u>Alleyne</u>, 133 S.Ct. at 2155.

[3]The facts of this case have been obtained from the written, stipulated factual proffer, executed by Movant and adopted at the change of plea proceeding. <u>See</u> Stipulated Factual Proffer (Cr-DE# 139. Cv-DE# 30-1). <u>See also</u> PSI at ¶¶7-28.

On November 13, 2010, Noa was intercepted leaving a voicemail message for Caceres, informing Caceres that the next kilogram of cocaine would cost $30,000.00. On November 16, 2010, during a telephone conversation, Caceres and Fordham discussed the fact that Fordham was out of cocaine and would be traveling to Miami to obtain additional cocaine while bringing the proceeds of his previous drug sales. During a series of intercepted conversations, Caceres informed Fordham that he would call his source of supply to obtain the cocaine. Caceres then immediately telephoned Noa, who advised Caceres that the price for a kilogram of cocaine was increased to $30,250.00. Caceres agreed to the new price and told Noa to proceed. The following morning on November 17, 2010, Caceres received an incoming intercepted call from Alvarez who inquired whether Fordham had arrived and if he had brought the money. Caceres responded that Fordham was then with him. Again on November 25 and 28, and December 3, 2010, Caceres and Noa were intercepted arranging for the purchase of additional quantities of cocaine.

IV. <u>Procedural History</u>

A. <u>Indictment and Pretrial Proceedings</u>

On August 25, 2011, Caceres was charged by Indictment with the offenses of conspiracy to possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 846 (Count 1), possession with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 2-5), and conspiracy to possess with intent to distribute methylenedioxymethamphetamine ("MDMA"), in violation of Title 21, United States Code, Section 846. (Count 6). (Cr-DE# 3). Caceres was arrested on September 15, 2011, and he made his Initial Appearance the following day. (Cr-DE# 21, 22). On September 22, 2011, attorney Paul Petruzzi filed a Notice of Temporary Appearance and on September 29, 2011, he filed a Notice of Permanent Appearance. (Cr-

4

DE# 29, 39).

During Caceres' arraignment on September 30, 2011, where he entered pleas of not guilty to the crimes charged, a Standing Discovery Order was entered and two weeks later, on October 17, 2011, the government filed its Response to the Standing Discovery Order. (Cr-DE# 42, 44, 45, 57). The discovery provided by the government included three compact discs containing recorded conversations and transcripts of those conversations had by Caceres pursuant to authorized wire interception. (Cr-DE# 57). On December 16, 2011, codefendant Mason filed an Unopposed Motion to Continue Trial (Cr-DE# 85), seeking a continuance of the trial on the basis that the case was a multi-defendant drug conspiracy case, the discovery was voluminous and included Title III wire intercepts and other related evidence, and the legal issues were complex. (Cr-DE# 85). Caceres also sought a continuance, adopting codefendant's motion. (Cr-DE# 86). The Court granted the motion to continue, stating in pertinent part in its Order:

> This is a multi-defendant drug conspiracy case involving voluminous discovery and complex legal issues relating to Title Ill wiretaps. Defense counsel are in need of additional time to prepare for trial. The Court finds that the failure to grant a continuance in this case would deny the Defendants the reasonable time necessary for effective trial preparation, taking into account the exercise of due diligence, pursuant to 18 U.S.C. §3161 (h)(7)(B)(iv). Accordingly, the Court finds that the ends of justice served by an extension of the speedy trial deadlines outweigh the best interest of the public and the Defendants in a speedy trial pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv).

(Order Continuing Trial Date at 1-2 entered December 21, 2011)(Cr-DE# 88). Trial proceedings were again continued by order entered on February 27, 2012, due to ongoing plea negotiations with the government. (Cr-DE# 93, 97).

On May 3, 2012, Caceres retained new counsel, Hugo Rodriguez, and he was substituted as counsel. (Cr-DE# 112). On May 8, 2012,

newly retained counsel requested a continuance of the trial, stating that he needed additional time to obtain from former trial counsel all discovery and needed time to review the discovery with Caceres. (Cr-DE# 115). The motion was granted on May 9, 2012, with the Court finding that the failure to grant a continuance in the case would deny Caceres the reasonable time necessary for effective trial preparation/plea negotiations and, therefore, the ends of justice warranted a continuance. (Cr-DE# 116).

> B. <u>Plea Agreement and Change of Plea Proceedings</u>

On June 11, 2012, Caceres filed a Notice of Intent to Plead Guilty and requested the Court to schedule a change of plea hearing. (Cr-DE# 123). Caceres entered into a negotiated written plea agreement with the government as to Count 1 of the Indictment and he executed a Stipulated Factual Proffer on June 21, 2012. (Cr-DE# 139, 140). On the same date, he appeared before the Honorable Barry L. Garber, United States Magistrate Judge, to change his plea of not guilty to guilty to Count 1 of the Indictment in exchange for the dismissal of the remaining charges. <u>See</u> Transcript of change of plea conducted on June 21, 2012. (Cv-DE# 30-1). A plea colloquy conducted pursuant to <u>Fed.R.Crim.P.</u> 11 ensued during which Caceres was sworn. <u>Id</u>.

The Court first obtained personal background information from Caceres. <u>Id</u>. at 4-5. The Court then went on to ask Caceres if he had received a copy of the Indictment, if he had an opportunity to discuss the charges against him with counsel, and if he understood the charge to which he was entering his plea of guilty. <u>Id</u>. at 5-6. Caceres responded in the affirmative to all questions. <u>Id</u>. When asked if he was satisfied with the legal representation received, Caceres answered: "Yes." <u>Id</u>. at 6. The Court next asked Caceres if he discussed the plea agreement with counsel before executing the agreement and if he understood the terms of the agreement. <u>Id</u>. at

6

6-7. Caceres again responded in the affirmative to the questions
and told the Court that he had no questions about the agreement.
Id. When asked if any promises or representations had been made to
him to induce him to plead guilty, Caceres answered in the
negative. Id. at 7, 8.  He also stated that no one had forced or
threatened him in any way to enter the guilty plea. Id. Caceres
informed the Court that he was pleading guilty of the offense
charged in Count 1 of the Indictment of his own free will and that
he was guilty of the offense. Id. at 9.

The Court then advised Caceres of the sentence possibilities
as to the charge set forth in Count 1 of the Indictment to which he
was entering his guilty plea. Id. at 10. Specifically, Count 1
carried a mandatory minimum term of imprisonment of ten years and
a maximum term of life, a fine of up to $4,000,000.00 and a term of
supervised release of at least five  years. Id. Caceres indicated
that he understood the possible penalties. Id. Regarding the
sentencing guidelines, the Court advised Caceres that he would be
sentenced in accordance with the advisory federal sentencing
guidelines, which would be calculated after an investigation by the
Probation Office. Id. at 12-13. Caceres indicated he understood.
Id. Caceres further told the Court that he had discussed the
sentencing guidelines with counsel and was informed how the
advisory guidelines might affect his sentence, and trial counsel
confirmed what Caceres had stated. Id. at 12. The Court
additionally informed Caceres of the charge against him as set
forth in Count 1 of the Indictment after which the Court asked
Caceres if he understood the charge to which he was pleading
guilty, and Caceres answered, "Yes." Id. at 15-16.

The Court fully advised Caceres that he had a right to proceed
to trial before a jury and that by entering the guilty plea he was
waiving all his constitution rights associated with a jury trial,

7

such as the right to confront witnesses against him, the right to
challenge the government's evidence, the right to testify in his
own behalf, and the right to call witnesses in his defense. Id. at
14-15. Caceres repeatedly told the Court that he understood his
various constitutional rights and that he agreed to waive those
rights. Id.

With regard to the factual basis for the guilty plea, Caceres
told the Court that he had executed a Stipulated Factual Proffer
after having discussed the document with counsel. Id. at 16.
Counsel agreed that the written Factual Proffer could be made a
part of the record and, thereby, waived reading of the proffer. Id.
The Court adopted the Stipulated Factual Proffer as setting forth
the facts the government would have proved beyond a reasonable
doubt if the case had instead proceeded to trial. Id.

Magistrate Judge Garber found the guilty plea to have been
freely and voluntarily entered and, therefore, recommended that the
guilty plea be accepted and that Caceres be adjudicated guilty of
the offense charged in Count 1. (Cr-DE# 140). The Honorable
Patricia A. Seitz, United States District Judge, adopted the Report
and Recommendation. (Cr-DE# 169). Caceres' plea of guilty was
accepted and he was adjudicated guilty as to Count 1 of the
Indictment. Id.

C. Presentence Investigation Report and Addenda thereto,
   Objections to Presentence Report and Sentencing

As determined by the Probation Officer, Caceres' base offense
level was 32 pursuant to the U.S.S.G. §2D1.1(c)(4) in that the
offense involved a conspiracy to possess with intent to distribute
at least 5 kilograms but less than 15 kilograms of cocaine. See PSI
at ¶38. Caceres received no victim-related adjustment or adjustment
for his role in the offense. Id. at ¶¶40, 41. After applying the
three-level adjustments for acceptance of responsibility pursuant

8

to U.S.S.G. §3E1.1(a), (b), Caceres had a total offense level of 29. Id. at ¶¶45-7.

Caceres had two criminal history points and a criminal history category of II. Id. at ¶52. The statutory minimum term of imprisonment was ten years and the maximum term was life pursuant to 21 U.S.C. §841(b)(1)(A). Id. at ¶82. Based upon a total offense level of 29 and a criminal history category of II, the sentencing guidelines range was 97 to 121 months' imprisonment. Id. at ¶83. However, pursuant to U.S.S.G. §5G1.1(c)(2), the applicable guidelines impressment range was 120 to 121 months. Id. Caceres faced a term of supervised release of at least five years. Id. at ¶¶84, 85.

Caceres, through counsel, filed objections to the PSI, arguing that his criminal history category substantially overrepresented the seriousness of his criminal history. (Cr-DE# 187). Caceres challenged his state court conviction for possession of two marijuana cigarettes for which he claimed that he had entered a plea of nolo contendere upon advice that if he admitted his mistake and entered the no contest plea, he would have no criminal record and only pay court fees. Id. However, based upon the admission and resultant conviction, Caceres received an additional criminal history point by the Probation Officer. Id. Caceres maintained that the additional point profoundly impacted his federal sentence, because it precluded him from qualifying for the safety value reduction,[4] U.S.S.G. §5C1.2(a)(1). Id. He was, therefore, subject to a ten-year mandatory minimum sentence as well as prevented from receiving a two-point departure on his offense level. Id. Without

---

[4]The "safety valve" was enacted to permit courts to sentence less culpable defendants to guideline sentences instead of imposing mandatory minimum sentences. Title 18 U.S.C. §3553(f); U.S.S.G. §5C1.2. See also United States v. Brehm, 442 F.3d 1291, 1299 (11th Cir.), cert. den'd, 549 U.S. 985 (2006); United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000).

the additional criminal history point, Caceres' offense level would have been a 27 and a sentence of 70 months' imprisonment. Id. Caceres requested this Court to find that his admission in the marijuana case significantly overstated his criminal history and grant him a "guided departure" to place him into Category I. Id.

Caceres also filed, through counsel, a Sentencing Memorandum, seeking a variance premised on the fact that he had helped save the life of a fellow inmate. (Cr-DE# 188). Before sentencing, the government filed a Motion for Reduction of Sentence pursuant to U.S.S.G. 5K1.1, asserting that Caceres was entitled to a 33 percent reduction in the otherwise applicable sentencing guidelines range based upon the substantial assistance he provided to the government in part which consisted of testifying on behalf of the government against codefendant Noa. (Cr-DE# 189).

Sentence proceedings were conducted on September 12, 2012. See Transcript of sentencing hearing. (Cv-DE# 30-2). At the start of sentencing, trial counsel reiterated what had been stated in the written objections regarding the marijuana conviction and provided the Court with additional background information as to that prior offense outlined in paragraph 51 of the PSI. Id. at 3-6.   Trial counsel argued that the marijuana offense should not be considered as a conviction or part of Caceres' criminal history and, if it were considered, it had a dramatic effect on the sentence to be imposed, especially because Caceres would no longer be eligible for safety valve consideration. Id. Further argument from trial counsel and the government was presented to the Court on the issue. Id. at 6-9. The Court then ruled as follows:

> But the Court will depart downward to a Criminal History
> Category of I, because in looking at the face of the docket
> sheet I see no indicia that this was treated anything other
> than a traffic offense, there is no indication that he was
> represented by counsel, it was a misdemeanor, and it appears
> that he was not taken into custody. So that although it would

> be recognized under the calculations of the guidelines it
> results in an overrepresentation of the criminal history as
> the guidelines are calculated. But due to 3(b), this allows me
> to sentence without regard to the statutory minimum, but he
> doesn't get the extra two points off.

Id. at 10-11. With the Court's ruling, the Probation Officer then
calculated that Caceres had a total offense level of 29, a Criminal
History Category I, resulting in a sentencing guidelines range of
87 to 108 months. Id. at 11.

The Court next granted the government's 5K1.1 motion. Id. at
11-12. Trial counsel then went on to argue that Caceres was
entitled to a variance based upon Caceres' role in saving the life
of a fellow inmate who attempted to hang himself. Id. at 12-16. The
government recommended that after taking into consideration the 33%
reduction based upon the 5K1.1 motion, Caceres should be sentenced
in the middle range of the sentencing guidelines which would result
in a sentence between 65 and 67 months' imprisonment. Id. at 17-19.
Trial counsel maintained that a sentence at the low end of the
sentencing guidelines was more appropriate in this case and that
Caceres should receive a sentence of no more than 58 months'
imprisonment with 53 months being a fair sentence. Id. at 18-19,
29, 30-31. Rather than speaking directly to the Court, Caceres
requested trial counsel to read into the record a prepared
statement as well as a letter from a former wife, which he did. Id.
at 19-21, 26-27.

Before imposing sentence, the Court addressed Caceres, asking:
"Are you satisfied that [trial counsel] Mr. Rodriguez has conveyed
what you would like expressed to me, Mr. Caceres." Id. at 31.
Caceres answered: "Yes." Id. After considering the §3553(a) factors
and the PSI, as well as considering Caceres' actions in saving the
life of a fellow inmate, the Court imposed a sentence of sixty
months' imprisonment followed by a five-year term of supervised
release. Id. at 36, 38-39. See also Cr-DE# 194. Caceres did not

prosecute a direct appeal from his conviction or sentence.

### D. §2255 Proceeding

On August 8, 2013,[5] just shy of one year after judgment was entered, Movant filed with this Court the instant pro se motion to vacate pursuant to 28 U.S.C. §2255. The government has filed a response to the motion, asserting that Movant is not entitled to §2255 relief.[6] (Cv-DE# 18). Approximately five months after he filed his initial motion to vacate, Caceres filed supplemental pleadings and a supporting affidavit, essentially rephrasing the claims initially asserted and providing additional factual and legal support for his claims. (Cv-DE# 19, 20, 24).

### V. Applicable Principles of Law

### A. Standard of Review, Procedural Bar and Evidentiary Hearing

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. It is well-established that a §2255 motion may not be a surrogate for a direct appeal. See, e.g., United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). Based upon this principle that §2255 review is not a substitute for a direct appeal, the following general rules have developed: (1) a defendant must assert all available claims on direct appeal, Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994); and (2) "[r]elief

---

[5]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's pleadings. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

[6]The government appropriately does not challenge the timeliness of the initial motion to vacate and has not addressed the timeliness of the supplemental pleadings whatever. See 28 U.S.C. §2255(f).

under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)(*quoting* United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).

Thus, non-constitutional error does not generally support a collateral attack on a final judgment. Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004), *citing*, Frady, 456 U.S. at 165, 102 S.Ct. at 1593, Stone v. Powell, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n.10, 49 L.Ed.2d 1067 (1976), *cert. denied*, 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004). Generally, ineffective-assistance-of-counsel claims are excepted from this general procedural default rule and are cognizable in a §2255 proceeding. Massaro v. United States, 538 U.S. 500 (2003).

An evidentiary hearing must be held on a §2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). For the reasons stated herein, the claims raised are clearly without merit. Consequently, no evidentiary hearing is required, although sought by Caceres. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, Guerra

v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979).

B. Guilty Plea Principles

"A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."[7] United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). "A plea is voluntary in a constitutional sense if the defendant receives real notice of the charge against him and understands the nature of the constitutional protections he is waiving." United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005), citing, Brown, 117 F.3d at 476. To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. Frye, 402 F.3d at 1127, quoting, United States v. Mosely, 173 F.3d 1318, 1322 (11th Cir. 1999). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004), attack the voluntary and knowing

---

[7]Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. <u>Mabry</u>, 467 U.S. at 509, *quoting*, <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. <u>Mabry</u>, 467 U.S. at 509. <u>See also</u> <u>Santobello v. New York</u>, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

## C. <u>Ineffective Assistance of Counsel</u>

Caceres' claims involve allegations of ineffective assistance of trial counsel. The standard of review of such claims is well-established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on an ineffective assistance of counsel claim, a habeas petitioner must establish both prongs of the *Strickland* standard. Accordingly, if the movant makes an insufficient showing on the prejudice prong, the court need not address the performance prong, and *vice versa*. <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not

address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs); <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1176 (11th Cir. 2001); <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000). If the petitioner cannot meet one of *Strickland*'s prongs, the court does not need to address the other prong. <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. at 2064.

To establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. <u>Strickland</u>, <u>supra</u>. <u>See also</u> <u>Cummings v. Secretary for Dept. of Corrections</u>, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")(internal quotation marks omitted). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(*en banc*), *cert. denied*, 531 U.S. 1204 (2001)(*quoting* <u>Burger v. Kemp</u>, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. <u>Id</u>. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. <u>Chandler</u>, 218 F.3d at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Id</u>. at 1313 n.12. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

assistance. <u>Strickland</u>, 466 U.S. at 689.

More pertinent to this case, a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). It is beyond dispute that an attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible consequences. <u>See generally</u> <u>Brady v. United States</u>, 397 U.S. 742, 756 (1970). <u>See also</u> <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ...."). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. <u>United States v. Grammas</u>, 376 F.3d 433, 436 (5th Cir. 2004).

Generally, as indicated, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Padilla</u>, 559 U.S. 356, 366, 130 S.Ct. at 1482. In the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. <u>Hill</u>, 474 U.S.

17

at 56-59. <u>See also</u> <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).[8] A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 104 S.Ct. at 2052. "Surmounting *Strickland's* high bar is never an easy task." <u>Padilla</u>, 559 U.S. at 371, 130 S.Ct. at 1485.

The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 559 U.S. at 372, 130 S.Ct. at 1485 (*citing* <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." <u>Meyer v. Branker</u>, 506 F.3d 358, 369 (4th Cir. 2007), *cert. denied*, 554 U.S. 925, 128 S.Ct. 2975, 171 L.Ed.2d 899 (2008)(*quoting* <u>Hill</u>, 474 U.S. at 59-60). In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136(1977).

Since the sentence ultimately imposed upon the defendant is a "result of the proceeding," in order for a petitioner to satisfy the prejudice-prong of *Strickland*, he must demonstrate that there is a reasonable probability that the conditions of his guilty plea or his sentence would have been different but for his trial counsel's errors. <u>See</u> <u>United States v. Boone</u>, 62 F.3d 323, 327

---

[8]The Supreme Court in *Frye* and *Lafler* clarified that the Sixth Amendment right to effective assistance of counsel under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) extends to the negotiation and consideration of plea offers that lapse or are rejected. <u>See</u> <u>Frye</u>, 132 S.Ct. at 1404-08; <u>Lafler</u>, 132 S.Ct. at 1384.

(10th Cir.)(rejecting the defendant's claim that counsel was ineffective in part because the defendant failed to show "that the resulting sentence would have been different than that imposed under the Sentencing Guidelines"), <u>cert</u>. <u>denied</u>, 516 U.S. 1014 (1995). Thus, the *Strickland* test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. <u>See</u> <u>Glover v. United States</u>, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established <u>Strickland</u> prejudice"); <u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5th Cir. 1993).

## VI. <u>Discussion</u>

### A. <u>Ineffective Assistance of Counsel Re: Pre-Guilty Plea</u>

Movant alleges that initial trial counsel improperly failed to present him before the federal grand jury; failed to file pre-trial motions, challenging the grand jury proceedings and resultant Indictment; failed to seek discovery materials from the government, including *Brady* and/or *Jencks* materials; and failed to prepare for trial. Caceres is not entitled to relief on his claim that he received ineffective assistance of trial counsel with regard to his performance during the pre-plea stage of the case in that the claim, and all related subclaims, have been waived by the guilty plea.

As stated above, the traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in the proceedings. <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)(holding that a defendant who has pled guilty waives his right to appeal constitutional violations that occurred prior to the guilty plea and noting that a guilty plea represents a break in the chain of events which had preceded it in the criminal process); <u>Lefkowitz v. Newsome</u>, 420 U.S. 283, 288 (1975)("'When a criminal defendant has

19

solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'")(quoting Tollett v. Henderson, 411 U.S. at 267). See also United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997); Barrientos v. United States, 668 F.2d 838, 842 (5th Cir. 1982). The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. See Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 456 U.S. 992 (1982). See also United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. See Broce, 488 U.S. at 574-575. Thus, a voluntary guilty plea constitutes a waiver of all non-jurisdictional defects in the proceeding up to that point.

More specific to this case, Caceres attempts to undermine the lawfulness of his guilty plea by challenging the pre-plea representation received from trial counsel, alleging that his lawyer failed to conduct a proper investigation into the facts of the case, file various pretrial motions and present various defenses. Such allegations do not relate to the voluntariness of the plea. United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are waived by guilty plea). See generally Denton v. United States, 465 F.2d 1394, 1395 (5th Cir. 1972)(holding that challenge to criminal complaint and arrest warrant were waived by plea of guilty, knowingly and voluntarily entered); Franklin v. United States, 589 F.2d 192, 194-95 (5th Cir. 1979)(holding that

guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a section 2255 proceeding). <u>See also</u> <u>Tiemens v. United States</u>, 724 F.2d 928, 929 (11th Cir.)(stating that "a guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process"), <u>cert</u>. <u>denied</u>, 469 U.S. 837 (1984).

Furthermore, the Eleventh Circuit has held that an unconditional guilty plea waives such defects as the right to inspect grand jury minutes and the right to challenge the composition of the grand and petit juries. <u>Pierre</u>, 120 F.3d at 1155-56. <u>See also</u> <u>United States v. Tallant</u>, 547 F.2d 1291, 1294 n. 4, 1295 (5th Cir. 1977); <u>Winters v. Cook</u>, 466 F.2d 1393, 1394-95 (5th Cir. 1972). Defects in the indictment are clearly non-jurisdictional. <u>See</u> <u>United States v. Boniface</u>, 631 F.2d 1228, 1229 (5th Cir. 1980)(holding that claimed defect in indictment, to effect that indictment was allegedly clandestinely constructed by the United States Attorney after grand jury voted on it and subsequently signed by the foreman separate and apart from the grand jury, was nonjurisdictional and was waived by defendant's guilty plea). Allegations that the government improperly withheld exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and any related defense is also waived by the lawful guilty plea. <u>See</u> <u>United States v.</u> <u>Richards</u>, 314 F.App'x 522, 524-525, 2008 WL 2661304, *2 (4th Cir. 2008)(holding that under *Tollett*, movant's valid guilty plea waived the *Brady* claim in that it was a nonjurisdictional defect).

Even if not waived by the guilty plea, Caceres' attack on trial counsel's pre-plea performance lack merit. It is apparent that when he stipulated to the facts of the offense and then entered into the negotiated plea agreement, the movant understood

the facts and the elements of the offense upon which the charge rested. By way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses that he may be entitled to as it relates to his case. His sworn responses on the record support this.

Additionally, Caceres' substantive allegation that trial counsel rendered constitutionally ineffective assistance with regard to the investigation stage of the case is meritless as contradicted by the record. Contrary to Caceres' allegations, initial trial counsel did seek discovery materials from the government, making an *ore tenus* request for discovery at Caceres' arraignment on September 30, 2011, and pursuant to the request, this Court issued a Standing Discovery Order. See Cr-DE# 42, 44, 45. The government complied with the discovery request and provided Caceres three compact discs containing recorded conversations and transcripts of those conversations had by Caceres pursuant to authorized wire interception. See Cr-DE# 57. Due to the voluminous nature of the discovery provided, both initial and successor trial counsel sought and received continuances of the trial so that effective trial preparation could be conducted. See Cr-DE# 85, 86, 88. The government provided Caceres with all discovery to which he was legally entitled and all discovery was reviewed by counsel and again reviewed with Caceres. The record does not show any deficiency on the part of trial counsel or misconduct on the part of the government whatever to pretrial discovery.[9] The failure to disclose *Brady* evidence prior to a guilty plea also does not

_____

[9]As indicated under *Brady*, the Government has a responsibility to disclose evidence favorable to the accused when the evidence is material to guilt or punishment. Id. at 87, 83 S.Ct. 1194. To obtain relief under *Brady*, a defendant must show that: (1) the evidence is favorable to the defendant; (2) the Government suppressed the evidence; and (3) the documents subject to disclosure exist and were not disclosed. There is no indication in the record whatever that any *Brady* materials existed.

establish a constitutional violation because impeachment information is a safeguard for a fair trial, not a plea. <u>United States v. Ruiz</u>, 536 U.S. 622, 633, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). <u>See also</u> <u>United States v. Richards</u>, 314 F.App'x at 524-525. Thus, regardless of the procedural bar, Caceres would receive no relief on his allegation.

Finally, as indicated above, Caceres assured the Court during the change of plea proceeding that he was fully satisfied with the representation and advice given to him by counsel in the case which included discussions on the crimes charged and negotiated plea agreement. Caceres also affirmed that he had understood all of the constitutional rights that he was waiving by virtue of the entry of the instant guilty plea. Such rights necessarily included the waiver of his right to make the government prove him guilty by presenting evidence beyond a reasonable doubt. Again, he unequivocally admitted that he was in fact guilty of the offense to which he was entering the guilty plea as detailed in his executed written Factual Proffer.

Since the plea was entered knowingly and voluntarily, Caceres' allegations that initial trial counsel rendered ineffective assistance for failing to present him before the federal grand jury, file various pre-trial motions, seek discovery materials from the government, and prepare for trial have been waived.

If Caceres is claiming that his guilty plea was unknowingly and involuntarily entered such a claim too is meritless. As pointed out, since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady</u>, 397 U.S. at 748; <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). <u>See also</u> <u>United States v.</u>

23

Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. See United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam).

The record as extensively set out above clearly indicates that the plea of guilty here is lawful in that it was entered knowingly, voluntarily and freely with the benefit of competent counsel, as required by applicable constitutional principles. Any contrary assertions by Caceres in this collateral proceeding are, therefore, belied by the record. As noted, Caceres' solemn declarations in open court carry a strong presumption of truthfulness. Blackledge, 431 U.S. at 73-74. See also United States v. Anderson, 384 F.App'x 863, 865 (11th Cir. 2010)("There is a strong presumption that statements made during a plea colloquy are true."); United States v. Munguia-Ramirez, 267 F.App'x 894, 897 (11th Cir. 2008)(stating that when a movant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true")(citations omitted); United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

While it appears that Caceres does not now believe so, he received a substantial benefit from entering into the plea agreement since a harsher outcome was most likely if he had proceeded to trial, as will be demonstrated in the discussion below

24

regarding counsel's performance as to sentencing. Review of the Stipulated Statement of Facts reveals that the evidence against Caceres was overwhelming. Although Caceres states in his motion to vacate that he should have proceeded to trial rather than entering a guilty plea, as did codefendant NOA,[10] such an assertion is clearly not credible in that he unequivocally admitted that he was in fact guilty of the offense to which he was entering the guilty plea, as detailed in his executed written Stipulated Factual Proffer which was expressly adopted during the change of plea proceeding. Caceres cannot now retract those averments when it is convenient for him to do so. Further, Caceres identifies no defense to the crimes charged, let alone any iable defense.

### B. Ineffective Assistance of Counsel Re: Sentencing

Caceres alleges that he received ineffective assistance from successor trial counsel regarding to the sentence imposed, because his lawyer failed to investigate or challenge his criminal history, challenge the sentencing enhancements, seek reduced sentencing by way of the Safety Valve; and raise an *Alleyne*-type objection. He also appears to raise a related claim of prosecutorial misconduct, alleging that the enhancements included in the PSI were erroneous. Caceres' claim of ineffective assistance of counsel pertaining to sentencing, and all related subclaims, are meritless, as belied by the record.

As stated above, trial counsel filed objections to the PSI in which counsel challenged the criminal history category set out in the PSI, arguing that it overrepresented the seriousness of Caceres' criminal history. See Cr-DE# 187. Defense counsel challenged the underlying facts which lead to Caceres' previous

---

[10]Codefendant Noa was charged only in Count 1 of the Indictment and he was tried before a jury on the conspiracy offense. He was found not guilty by the jury and was acquitted as to the single count of the Superseding Indictment. (Cr-DE# 180, 181).

state court conviction for his possession of two marijuana cigarettes and extensively argued the objection during sentencing, alerting the Court to the fact that the conviction precluded Caceres from qualifying for a lesser sentence pursuant to the Safety Valve. See Transcript of sentencing hearing at 3-9. (Cv-DE# 30-2). The trial court agreed with counsel's arguments in part and reduced Caceres' Criminal History Category from II to I, resulting in a sentence without regard to the statutory minimum. Id. at 10-11. With the Court's ruling, the advisory sentencing guidelines range was 87 to 108 months instead of 97 to 121 months. Id. at 11. See also PSI at ¶83. Counsel additionally sought a variance based upon actions taken by Caceres in prison which helped save the life of a fellow inmate. See Cr-DE# 188; Transcript of sentencing hearing at 12-17.

Caceres' additionally alleges that counsel rendered ineffective assistance when he failed to challenge the sentencing enhancement. Specifically, Caceres maintains that he was improperly held accountable for five kilograms of cocaine, the government had not proved that amount of cocaine, and trial counsel failed to inform him that such an amount of cocaine subjected him to the mandatory minimum term of imprisonment. The record again contradicts Caceres' allegations. Caceres told the Court during the change of plea hearing that he had received a copy of the Indictment, had reviewed the Indictment with counsel, and had understood the charges against him. See Transcript of change of plea hearing at 5-6. See also Indictment (Cr-DE# 3).[11] Caceres entered into a negotiated written Plea Agreement with the

---

[11]Count 1 of the Indictment charged Caceres with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§846 and 841(b)(1)(A)(ii). (Indictment at Count 1)(Cr-DE# 3). The Indictment expressly provided that: "Pursuant to Title 21, United States Code, Section 841(b)(1)(A)(ii), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine." Id.

government. Caceres told the Court that he had reviewed and discussed the agreement with counsel before executing it and that he understood the terms of the agreement. <u>See</u> Transcript of change of plea hearing at 6-7. The written agreement expressly provided for a mandatory minimum prison term of ten years and Caceres was advised of the mandatory minimum by the Court during the change of plea proceeding. <u>See</u> Transcript of change of plea hearing at 10. <u>See</u> Plea Agreement at ¶¶1, 4.[12] Caceres was clearly well-aware that the amount of narcotics he was being held responsible for and pleading guilty to subjected him to a ten-year mandatory minimum sentence.

*Alleyne* also provides Caceres no relief.[13] The Supreme Court decided *Alleyne* on June 17, 2013, long after sentencing which was conducted in the instant case on June 21, 2012. It is well settled that an attorney's failure to anticipate a change in the law will not support a claim of ineffective assistance of counsel. <u>Geter v. United States</u>, 534 F.App'x 831, 836 (11th Cir. 2013). Moreover, "it generally does not fall below the objective standard of reasonableness for trial counsel to fail to raise a claim in anticipation that undeniably would lose under current law but might succeed based on the outcome of a forthcoming Supreme Court decision." <u>Dell v. United States</u>, 710 F.3d 1267, 1282 (11th Cir. 2013). Additionally, trial counsel's concession at sentencing that

---

[12]Paragraph 4 of the plea agreement states:

The defendant also understands and acknowledges that upon his conviction to Count 1, the Court must impose a *minimum term of imprisonment of ten (10) years* and may impose a statutory maximum term of life imprisonment, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $4,000,000.

(emphasis added)(Plea Agreement at ¶4.)(DE# 138).

[13]It is noted that the Eleventh Circuit has recently determined that *Alleyne* does not apply retroactively. <u>Jeanty v. Warden, FCI-Miami</u>, 757 F.3d 1283 (11th Cir. July 22, 2014)(noting neither *Alleyne* itself nor any later Supreme Court decision holds *Alleyne* is retroactive)(citations omitted).

Caceres did not qualify for relief pursuant to the Safety Valve was not deficient performance as maintained by Caceres. The Court correctly found that Caceres was not entitled to a two-level reduction, as he would have received if Caceres had been so eligible. See Transcript of sentencing hearing at 10. See also U.S.S.G. §4A1.3(b)(3)(B)(limiting the application of U.S.S.G. §5C1.2 in event of downward departure to a Criminal History Category I). It is well established that counsel is not ineffective for failing to preserve or argue a meritless claim. See Knowles v. Mirzayance, 556 U.S. at 123, 129 S.Ct. at 142. See also Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002)(finding counsel not ineffective for failing to raise issues clearly lacking in merit). It is again mentioned that Caceres' sentence was without regard to the mandatory minimum.

Therefore, trial counsel's performance was not deficient as alleged in that he vigorously represented Caceres during sentencing, presenting all applicable arguments and evidence before sentence was imposed to obtain the lowest possible sentence on behalf of Caceres. Even if trial counsel's performance could be deemed deficient for any or all the reasons specified by Caceres, Caceres cannot satisfy the prejudice prong of Strickland. Because the Court ruled that Caceres would not be subject to the minimum mandatory sentence, he ultimately received a sentence of sixty months' imprisonment due to the granting of the government's 5K1.1 motion and after consideration of sentencing factors as presented by counsel to the court, such as, Caceres' noble actions which helped save the life of a fellow inmate. The sixty-month term was well-below what Caceres had initially been subject to (i.e., 97 to 121 months with a mandatory minimum of 120 months) and below the 65 to 67 term of imprisonment recommended by the government after the 33% reduction had been calculated.

C. Conclusion

Caceres' assertions in this collateral proceeding that counsel engaged in negotiations with the government without his express permission, consent or direction and/or that he would not have entered the guilty plea but would have instead gone to trial on the crimes charged are not credible. The record in this case indicates that there was a factual basis for the pleas, as found by the trial court during the plea proceeding. Due to the efforts of successor trial counsel, Caceres ultimately entered into a negotiated plea agreement with the government where he was able to provide substantial assistance to the government. As a result of the assistance provided, Caceres received a 33% sentence reduction. In addition, he received the benefit of acceptance of responsibility and all dismissal of all other counts of the Indictment. Caceres obtained a clear benefit from entering the guilty plea in that an even harsher outcome was most certain to have resulted if he had proceeded to trial on all crimes charged where a finding of guilt by a jury would have been all but inevitable. The entry of the guilty plea was certainly in Caceres' best interest and counsel's performance was not constitutionally ineffective with regard to the guilty plea and/or sentencing. See Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984). See also Glover v. United States, 531 U.S. 198, 121 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993)(cited in Glover).

VII. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse

29

to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the motion to vacate is clearly without merit, Movant cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

VIII. <u>Recommendations</u>

Based upon the foregoing, it is recommended that this motion to vacate, as amended and supplemented, be DENIED,[14] and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 29th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Lazaro Caceres, <u>Pro</u> <u>Se</u>
     Reg.No. 95510-004
     USP Atlanta
     United States Penitentiary
     P.O. Box 150160
     Atlanta, GA  30315

     Yvonne Rodriguez-Schack, AUSA
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132 September 5, 2014

---

[14]It is noted that the Undersigned has thoroughly and carefully reviewed Movant's motion to vacate as well as his supplemental pleadings and reply. Any additional claims or subclaims not specifically addressed in this Report are found to be without merit.

31